CASE 22.—PROSECUTION AGAINST CHARLES M. GREEN-WELL, WEBB AND RUSSELL GREENWELL FOR MALICIOUSLY SHOOTING AND WOUNDING OVER-TON NEWTON WITH INTENT TO KILL.—March 22.

## Greenwell, &c. v. Commonwealth

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Defendants Charles M. and Webb Greenwell convicted and appeal. Affirmed.

1. Indictment—Duplicity—Assault—Intent to Kill.—The first count of an indictment charged three defendants with shooting and wounding N. with a pistol, and striking and wounding him with a shotgun, and striking and stabbing him with a knife with intent to kill. The second count charged that the first defendant shot N. with a pistol with intent to kill, and that the other defendants aided him. The third count charged the second defendant with striking and beating N. with a shotgun with intent to kill, and that the other defendants aided him. The fourth count charged that the third defendant cut and wounded N. with a knife with intent to kill, and that the other defendants aided him. Held, that the indictment was not bad for duplicity; there being but one offense charged, the malicious wounding of N. with intent to kill.

2. Criminal Law—Admissibility of Evidence—Other Assaults.—In

a prosecution for assault with intent to kill, evidence of an: assault on other persons by one of the defendants committed at the same time as the offense charged, and which were parts of the same occurrence, is admissible to explain the motives actuating the parties.

3. Homicide—Instructions.—In a prosecution for assault with intent to kill, the jury were instructed that if they believed that defendants acting together, or that one or more,. maliciously shot N. with intent to kill, or cut him with a knife with intent to kill, or struck him with a shotgun with intent to kill (if the shotgun was reasonably calculated to produce death when used under the circumstances), they should find defendants, or defendant who so shot, cut, or struck N., guilty of malicious wounding, and if they further believed that at the time said N. was so shot, cut, and struck, or either shot, cut, or struck, if he was so injured by defendants or any one of them, the other defendant or defendants maliciously aided one or more codefendants in so injuring N., they should find him or them guilty of malicious wounding. Held, that the instruction did not authorize finding defendants guilty of one of several offenses.

4. Same—Self-Defense.—The jury were instructed that if they believed that at the time defendants or any one of them assaulted N. they believed and had reasonable grounds for believing any one or more of defendants were in danger, and believed and had reasonable grounds for believing they had no safe means of averting the danger except by assaulting N., they are excusable on the ground of self-defense, unless they further believe that defendant or defendants, if any were in danger, provoked the difficulty in which they or any of them assaulted N., making it necessary for him to defend himself, in which event defendants cannot excuse themselves, unless said defendant or defendants in good faith withdrew or in good faith attempted to withdraw from said difficulty. Held, that the instruction did not require all of the defendants to believe and have reasonable grounds for believing that one or more of their number were in danger before one of them could act.

5. Criminal Law—Trial—Arguments to Jury—Other Offenses— Remarks Concerning.—The prosecuting attorney in his argument to the jury may refer to other offenses by defendant where evidence has been introduced concerning them; but, where he goes outside the record, it is the duty of the court to stop the argument, with an admonition to the jury to disregard it if it is outside the record.

JOHN S. KELLEY for appellants.

## POINTS AND AUTHORITIES.

1. The indictment charges more than one offense and the demurrer should have been sustained. (Criminal Code, section 126; Ky. Stats., section 1166; Commonwealth v. Patrick, 90 Ky., 607.)

2. Every instruction must be based upon a theory supported by evidence.

3. The instruction on self-defense does not permit either of the defendants to avail himself of the plea unless all the defendants beleved that he or they were in danger of death or great bodily harm at the hands of Newton. (Arnold, &c., v. Commonwealth, 21 Ky. Law Rep., 1572.)

4. The instruction denies to each of the defendants the right to the plea of self-defense, if either of his codefendants provoked or brought on the difficulty, although he did not participate in such wrongful act. (Turner v. Commonwealth, 17 Ky. Law Rep., 1280.)

5. The misconduct of the commonwealth's attorney was such as to reasonably inflame the minds of the jury and excite their prejudice and require a reversal. (State v. Fisher, 124 Mo., 460; State v. Bobbst, 131 Mo., 1149; Stone v. State, 22 Tex. App., 185; State v. Baker, 57 Kans., 541.)

6. Conduct of the commonwealth's attorney well calculated to prejudice the jury against a defendant will warrant a reversal of the conviction although the court sustained objections to the unwarranted statements. (Heller v. People, 22 Cal., 11, 43 Pac., 124; People v. Fielding, 158 N. Y., 542, 46 L. R. A., 652; Moore v. State, 21 Tex. App., 666; Cargill v. Commonwealth, 12 Ky. Law Rep., 151; Rhodes v. Commonwealth, 21 Ky. Law Rep., 1071.)

7. The court admitted evidence of alleged trouble between Miles Head and appellant Webb Greenwell and of the killing of Johnie Burns and that Tom Newton was shot by one of defendants which was highly prejudicial.

D. A. McCANDLESS, Commonwealth's Attorney Tenth District, for appellee.

N. B. HAYS, and C. H. MORRIS of counsel.

## SUBJECTS DISCUSSED AND CITATIONS.

1. The indictment is good.

Greenwell, &c., v. Commonwealth.

(a) It is not bad for duplicity in joining aiders and abettors. (Patrick v. Commonwealth, 80 Ky., 605; Howard v. Commonwealth, 110 Ky., 358; Benge v. Commonwealth, 92 Ky., 1, Travis v. Commonwealth, 96 Ky., 77; Howard v. Commonwealth, 96 Ky., 19; Jackson v. Commonwealth, 100 Ky., 239; Collins v. Commonwealth, 24 Ky. Law Rep., 884; Angel v. Commonwealth, 14 Ky. Law Rep., 10; Puckett v. Commonwealth, 13 Ky. Law Rep., 466; Culp v. Commonwealth, 82 Ky., 35.)

(b) This is one offense committed by different means and different modes and the act of shooting, striking and cutting are not distinct or separate offenses. (Criminal Code, sec. 126; Commonwealth v. Duff, 87 Ky., 586; Commonwealth v. Lowe, 25 Ky. Law Rep., 535; Ben v. State, 58 Am. Dec., 234; Wharton Criminal Law, sec. 416; State v. Bell, 92 Am. Dec., 658, s. c.; 27 Md., 675; footnote vol. 92 Am. Dec., p. 661; Teat v. State, 53 Miss., 439, s. c., vol. —, Am. Dec. p. —.)

2. The first instruction is a concise exposition of the law. (Howard v. Commonwealth, 110 Ky., 358; Benge v. Commonwealth, 92 Ky., 1; Travis v. Commonwealth, 96 Ky., 77; Howard v. Commonwealth, 96 Ky., 19; Jackson v. Commonwealth, 100 Ky., 239.)

3. The instruction on self-defense is not subject to criticism. (Arnold v. Commonwealth, 21 Ky. Law Rep., 1572; McIntosh v. Commonwealth, 29 Ky. Law Rep., 1100; Utterback v. Commonwealth, 105 Ky., 723; Taber v. Commonwealth, 26 Ky. Law Rep., 754.)

4. As to misconduct of counsel for the commonwealth. (Delaney v. Commonwealth, 18 Ky. Law Rep., 214; Parrot v. Commonwealth, 20 Ky. Law Rep., 754; Brown v. Commonwealth, 13 Ky. Law Rep., 852; Dunklin v. Commonwealth, 13 Ky. Law Rep., 195; Cottrell v. Commonwealth, 13 Ky. Law Rep., 305; Hilton v. Commonwealth, 13 Ky. Law Rep., 158; Handley v. Commonwealth, 15 Ky. Law Rep., 736; Whitney v. Commonwealth, 24 Ky. Law Rep., 2524; Jackson v. Commonwealth, 100 Ky., 238; Bishop v. Commonwealth, 22 Ky. Law Rep., 1164.)

5. No incompetent evidence was admitted. (Horens v. Commonwealth, 26 Ky. Law Rep., 710.)

OPINION OF THE COURT BY JUDGE HOBSON— Affirming.

Charles M. Greenwell, Webb Greenwell, and Russell Greenwell were jointly indicted in the Nelson circuit court under section 1166, Ky. Stats., 1903, for

maliciously wounding Overton Newton with intent to kill him. On a trial before the jury Russell Green-well was acquitted, but Charles M. and Webb Green-well were convicted; their punishment being fixed at three years in the penitentiary.

They ask a reversal of the judgment on the following grounds: (1) The court erred in overruling their demurrer to the indictment. (2) The court erred in the admission of evidence. (3) The court erred in instructing the jury. (4) Misconduct of the common-wealth attorney in the concluding argument. The objections will be disposed of in the order stated.

1. The indictment was in four counts. In the first count it was charged that the three defendants will-fully and maliciously shot at and wounded Overton Newton with a pistol, a deadly weapon, and struck and wounded him with a shotgun, a deadly weapon, and struck and stabbed him with a knife, a deadly weapon, with intention to kill him. In the second count it was charged that Webb Greenwell shot New-ton with a pistol willfully and maliciously with intent to kill, and that Charles M. Greenwell and Russell Greenwell were present, aiding, counseling, and assisting him in so doing. In the third count it was charged that Charles M. Greenwell willfully and maliciously struck and beat Newton with a shotgun with intention of killing him, and that Webb Green-well and Russell Greenwell were present, and will-fully and maliciously aided, counseled, and assisted him in so doing. In the fourth count it was charged that Russell Greenwell willfully and maliciously cut and wounded Overton Newton with a knife with intent to kill him, and that Charles M. Greenwell and Webb Greenwell were present, and willfully and maliciously aided, assisted, and abetted him in so

doing.   The indictment is not bad for duplicity.   It. only charges one offense, the malicious wounding of Overton Newton by the three defendants in one transaction.   The offense is charged to be committed in different ways, but it is one offense.   The offense is the malicious wounding of Overton Newton by the three defendants with intent to kill him; and whether it was done with a knife, a pistol, or a gun, each being a deadly weapon, it falls within the statute.   The thing the statute punishes is the malicious attempt to kill with a deadly weapon, and it does not follow that two offenses would be committed if more than one person joined in the assault, or if more than one weapon was used.   There would not be several offenses if several shots were fired from the same pistol, or several cuts were made with the same knife, or several blows were struck with the same deadly weapon, all in the same assault or transaction.   The The fact that two pistols were used instead of one would be immaterial, or that, instead of two pistols, a pistol and a knife were used.   The transaction is the assault with intent to kill, and the different forms in which the intent to kill may have been attempted to be carried into effect do not change the character of the act, or make it susceptible of being split up into several different offenses.   The statutory offense is committed where the crime would have been murder if death had resulted.   Rapp v. Commonwealth, 14 B. Mon. (Ky.) 614.   There is no reason that an instruction in a form sufficient for the greater should not be sufficient for the inchoate offense.   The case falls within the rule laid down in Thompson v. Commonwealth, 1 Met. (Ky.) 13, and Commonwealth v. Lowe, 116 Ky. 335, 25 Ky. Law Rep. 534, 76 S. W. 119.   The statute under which

the case of Commonwealth v. Patrick, 80 Ky. 605, 4 Ky. Law Rep. 660, was decided, was materially different from the present statute. Under that statute the aider and abettor was not punished as the principal. His offense was only a misdemeanor, but under the present statute he is punished as principal, and his offense is the same as the principal's. The decision in that case is therefore not authority under the present statute, and is not now applicable. Benge v. Commonwealth, 92 Ky, 1, 13. Ky. Law Rep. 308, 17 S. W. 146; Howard v. Commonwealth, 110 Ky. 358, 24 Ky. Law Rep. 91, 612, 61 S. W. 756.

2. The proper understanding of the second objection requires a brief statement of the facts in the case. Some time previous to September, 1905, Webb Greenwell had killed John Burns. Overton Newton, Miles Head, and others were members of a sheriff's posse which hunted for him to arrest him for the homicide. Greenwell was acquitted of killing Burns. After this, on September 23, 1905, the three Greenwells, Overton Newton and his brother, Miles Head, and others, were at Balltown, a small town in Nelson county, where there were two saloons. While there that day Webb Greenwell used very ugly language about the men who had assisted the sheriff in arresting him, cursing them, and saying he would get even with them. He had some words with Miles Head, and choked Head, making threats about what he would do. Later he cursed Overton Newton, and said to him that he (Newton) had come out to help arrest him when he killed Johnny Burns, and he intended to have his day with every one who assisted in that arrest. There is some conflict in the evidence as to what followed. The evidence for the commonwealth is to the effect that Newton told him he had nothing

against him, and that, as Greenwell advanced on him, Newton called upon him to stand back. He continued to advance, and Newton drew his pistol. Monroe Bartley, a brother-in-law of Newton's, struck the pistol down, causing it to go off, and it wounded Greenwell in the ankle. At this Newton backed out of the front door of the saloon, held by Bartley, and, as soon as he could get Bartley to let him go, ran down the pike toward the other saloon. In the meantime Webb Greenwell, who had gone out of the back door, had taken a pistol from a bystander and pursued Newton down the pike with it; Newton being by this time some yards away. His attention was attracted by some friend calling to him to look out. He turned, and, as he turned, Greenwell shot him with the pistol, inflicting a flesh wound in the leg. He tried to shoot then with his pistol, but, finding that it had been broken when Bartley knocked it down, turned and ran down to the other saloon, and when he reached it went in the door and fastened the door behind him. When he fastened the door and turned around, he saw Charles M. Greenwell, the brother of Webb, standing at the counter with a gun in his hand. Charles Greenwell had left the other saloon when the difficulty arose, and had run down to this saloon to get a pistol, but, not being able to find any, had gotten the gun, which was not loaded, and the proprietor's wife would not let him get the cartridges for it. As soon as Newton saw Charles Greenwell, he said to him not to hurt him, and not to let the others hurt him, as his pistol was broken. Charles Greenwell made him give up the pistol, which he did. About this time Tom Newton, the brother of Overton Newton, who was staggering drunk, and had been out in the yard, came in at the back door. Just after he

got in the room Webb Greenwell came around to the
back door and shot Tom Newton, wounding him. At
this Overton Newton took out his pocketknife and
cut Webb Greenwell, and he gave back. Charles
Greenwell then knocked Newton down with the gun
and beat up his head dreadfully. The woman inter-
ceded for him to stop, but he did not stop until New-
ton was insensible. The defendants objected on the
trial to the evidence as to Webb Greenwell choking
Head, and also objected to the evidence as to his
shooting Tom Newton. But it was all in effect one
transaction. The way he had acted toward Head
illustrated his animus, and showed what he wanted
to do to the other members of the posse who had
assisted in arresting him. The gist of the prosecu-
tion is malice. He had the same cause of complaint
against Overton Newton that he had against Head,
and the whole transaction could be given in evidence
on the question of malice. The shooting of Tom
Newton was, of course, a distinct offense from the
wounding of Overton Newton, and was not included
in the indictment; but it was all done in one trans-
action, and proof of the entire transaction was prop-
erly admitted to explain the motives actuating the
parties. It was in fact one difficulty from the time
it opened in the first saloon until Overton Newton
was beaten into insensibility in the second saloon,
and all the facts and circumstances occurring in the
transaction, or as part of it, or leading up to it, were
properly admitted in evidence.

3. The court gave six instructions—the first in-
struction covering the offense of malicious wounding;
the second being similar to it, but covering the offense
of wounding in sudden heat and passion; the third
being the hard labor instruction in case a fine was

imposed; the fourth and fifth relating to reasonable doubt, and the sixth to self-defense. The first and sixth instructions, which are those complained of, are as follows:

"(1) The court instructs the jury: If you believe from the evidence, to the exclusion of a reasonable doubt, that in Nelson county, before the finding of the indictment herein, the defendants, Webb Greenwell, Charles Mack Greenwell, and Russell Greenwell, acting together and in concert with each other, or that one or more of said defendants, willfully and maliciously shot and wounded Overton Newton with a pistol with intention to kill said Newton, or willfully and maliciously cut said Newton with a knife with inention to kill him, or willfully and maliciously struck said Newton with a shotgun with intention to kill him (if you believe from the evidence, to the exclusion of a reasonable doubt, said shotgun was a weapon reasonably calculated to produce death when used by a person of the physical strength of and in the manner in which it was used by one of the defendants on said occasion, if either of them did strike Newton with a shotgun), you should find the defendants or defendant who so shot or cut or struck said Newton, if any of the defendants did, guilty of malicious wounding, and fix the punishment of such defendant or defendants at confinement in the penitentiary for any time not less than one nor more than five years, and if you further believe from the evidence, to the exclusion of a reasonable doubt, that at the time said Newton was so shot, cut, and struck, or at the time he was either so shot, cut, or struck, if he was so shot, cut, or struck by defendants, or any of them, the other defendant or defendants were present or near enough to aid and assist said shoot-

ing, cutting, or striking, and that the defendant or
defendants thus present or thus near did wilfully and
maliciously aid, assist, abet, or counsel any one or
more of their codefendants to so shoot, cut, or strike
said Newton with intention to kill him, you should
find said defendant or defendants who thus aided,
assisted, abetted, or counseled said shooting, cutting,
or striking, if any of them did, guilty of malicious
wounding, and fix their punishment at confinement in
the penitentiary for any time not less than one nor
more than five years.''

''(6) If you believe from the evidence that, at the
time defendants or any of them shot Overton Newton
with a pistol or cut him with a knife or struck him
with a shotgun, if any of the defendants did so shoot
or cut or strike him, the defendants believed and had
reasonable grounds for believing any one or more of
said defendants was then in immediate danger of
loss of life or of receiving great bodily injury at the
hands of said Newton, and believed, and had reason-
able grounds to believe, they had no apparent and
safe means of averting said danger except by shoot-
ing, cutting, or striking said Newton, they are ex-
cusable on the ground of self-defense and apparent
necessity, and you should find them not guilty, unless
you further believe from the evidence, to the ex-
clusion of a reasonable doubt, that the defendant or
defendants so in danger from said Newton, if any
of them were in danger from him, sought and pro-
voked the difficulty with said Newton, in which they
or any of them shot, cut, or struck Newton, if any
of them did shoot, cut, or strike him, and made the
danger, if any, to said defendant or defendants from
Newton necessary or apparently necessary to said
Newton to defend himself from said defendants or

defendant, in which event said defendants cannot
excuse themselves on the plea of self-defense and
apparent necessity, unless said defendant or defend-
ants who sought and provoked the difficulty, if any
of defendants did so, in good faith withdrew or
attempted to withdraw from said difficulty before
Newton was shot, cut, or struck, if he was shot, cut,
or struck by defendant.''

The first instruction is not subject to objection on
the ground that it authorizes the jury to find the
defendants guilty of one of several offenses. The
offense with which they stood charged was malicious
wounding, and it was charged that this offense had
been committed in several different ways. If they
had committed the offense in any of the ways, they
were guilty. The sixth instruction is not liable to
objection on the ground that it required all of the
defendants to believe and have reasonable grounds
to believe that one or more of their number were
then in danger in order for one of them to act.
Taking the instruction as a whole, no jury could have
understood that one of them had not the right to act
in his self-defense, if he believed and had reasonable
grounds to believe that he or either of his brothers
was in danger. The sense of the instruction is so
evident, taking it all together, that no jury could have
misunderstood it, especially when it is read in con-
nection with instruction No. 5, on reasonable doubt.
As applied to the facts of the case, the instruction,
though not well drawn, could not have misled the
jury, and under the Code a judgment of conviction
cannot be reversed unless upon the whole record it
appears that the defendant's substantial rights were
prejudiced.

4. In the argument of the case to the jury neither

of the attorneys should have said anything to the jury about the grand jury, or reflected in any way on the conduct of the grand jury. This had nothing to do with the case. The court properly sustained the defendants' objection to what the commonwealth attorney proposed to say about the grand jury. We deem it unnecessary to go into detail as to the other matters complained of in the concluding argument of the commonwealth attorney. He had a right to refer to the fact that Webb Greenwell had killed John Burns, as this had come out in the evidence relating to the words used by Greenwell to Newton when he began the assault on him. The commonwealth attorney also had a right to refer to the choking of Head, as that had been brought out in the evidence, and to the actions of the defendant on the trial, as this was in the presence of the jury. The court, when the defendants' attorney objected to certain statements made by the commonwealth attorney as being outside of the record, should not simply have admonished the jury that it was the duty of counsel to keep within the record—that is, the evidence admitted by the court, and the instructions of the court to the jury— and that, if counsel said anything outside of the record, it was the duty of the jury to disregard it. The court should not have thus left the jury to determine whether the counsel was going out of the record or not. If he was out of the record, the court should have sustained the objection, and stopped the argument; or, if he was not out of the record, he should have overruled the objection. If the court did not remember the evidence, he should have refreshed his recollection. The jury should not be allowed to hear an improper argument, with an admonition that they are to disregard it if it is outside of the record, for

this leaves to the jury a matter which the court should determine. The jury should not hear the improper argument. But in the case at bar there was no substantial going out of the record by the commonwealth attorney; and, on the whole case, the judgment of conviction cannot be disturbed.

Judgment affirmed.